ORIGINAL

15 MAG 4455

APPROVED: [signature]
SEAN S. BUCKLEY/ANDREW J. DeFILIPPIS
Assistant United States Attorneys

U.S. DISTRICT COURT FILED DEC 12 2015 S.D. OF N.Y.

BEFORE: THE HONORABLE RONALD L. ELLIS
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA :

- v. - :

MAALIK ALIM JONES, :

Defendant. :

- - - - - - - - - - - - - - - - - - -x

**SEALED COMPLAINT** DOC #___

Violations of 18 U.S.C. §§ 2339B, 2339D, 371, 924(c), 3238, & 2.

STATE OF NEW YORK )
COUNTY OF NEW YORK : ss.:
SOUTHERN DISTRICT OF NEW YORK )

MARY BOESE, being duly sworn, deposes and says that she is a Special Agent of the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**

**CONSPIRACY TO PROVIDE MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION (AL SHABAAB)**

1. From in or about July 2011, up to and including in or about December 2015, in an offense occurring in and affecting interstate and foreign commerce, and begun and committed in Somalia and elsewhere outside of the jurisdiction of any particular State or district of the United States, MAALIK ALIM JONES, the defendant, who will be first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and willfully did combine, conspire, confederate and agree together and with each other to provide "material support or resources," as that term is defined in

Title 18, United States Code, Section 2339A(b), to a foreign terrorist organization, namely, al Shabaab, which was designated by the United States Secretary of State as a foreign terrorist organization on or about February 26, 2008, and is currently designated as such, as of the date of the filing of this Complaint.

2. It was a part and an object of the conspiracy that MAALIK ALIM JONES, the defendant, and others known and unknown, would and did agree to provide al Shabaab with material support and resources, including personnel, knowing that al Shabaab was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that al Shabaab engages and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Shabaab engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

3. In furtherance of the conspiracy and to effect the illegal object thereof, MAALIK ALIM JONES, the defendant, and others known and unknown, committed the overt acts set forth below, among others:

a. In or about 2011, JONES attended an al Shabaab training camp in Somalia.

b. In or about 2012, JONES engaged in combat on behalf of al Shabaab against soldiers of the Kenyan Government in Somalia.

c. From in or about 2011 through in or about 2015, on multiple occasions, JONES carried an AK-47 assault rifle while engaged in activities on behalf of al Shabaab in Somalia.

(Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(A), (d)(1)(C), (d)(1)(E), (d)(1)(F), and 3238.)

**COUNT TWO**

**PROVISION OF MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION (AL SHABAAB)**

4. From in or about July 2011, up to and including in or about December 2015, in an offense occurring in and affecting interstate and foreign commerce, and begun and committed in Somalia and elsewhere outside of the jurisdiction of any particular State or district of the United States, MAALIK ALIM JONES, the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly did provide and attempt to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b)(1), including personnel, to a foreign terrorist organization, namely, al Shabaab, which was designated by the United States Secretary of State as a foreign terrorist organization on or about February 26, 2008, and is currently designated as such, as of the date of the filing of this Complaint, knowing that al Shabaab was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that al Shabaab engages and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Shabaab engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), to wit, JONES traveled from the United States to Somalia to join al Shabaab, and after joining, JONES received military training and engaged in armed conflict on behalf of al Shabaab, among other things.

(Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (E), and (F), 3238, and 2.)

**COUNT THREE**

**CONSPIRACY TO RECEIVE MILITARY-TYPE TRAINING FROM A FOREIGN TERRORIST ORGANIZATION (AL SHABAAB)**

5. From in or about July 2011, up to and including in or about December 2015, in an offense occurring in and affecting interstate and foreign commerce, begun and committed in Somalia and elsewhere outside of the jurisdiction of any

particular State or district of the United States, MAALIK ALIM JONES, the defendant, who will be first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and willfully did combine, conspire, confederate and agree together and with each other to receive military-type training from and on behalf of al Shabaab, which was designated by the United States Secretary of State as a foreign terrorist organization on February 26, 2008.

6. It was a part and an object of the conspiracy that MAALIK ALIM JONES, the defendant, and others known and unknown, would and did receive military-type training from and on behalf of al Shabaab, knowing that al Shabaab was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), knowing that al Shabaab had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and knowing that al Shabaab had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339D.

7. In furtherance of the conspiracy and to effect the illegal object thereof, MAALIK ALIM JONES, the defendant, and others known and unknown, committed the overt acts set forth in paragraph 3 above, which are fully incorporated by reference herein, among others.

(Title 18, United States Code, Sections 371, 2339D(a), (b)(1), (b)(3), (b)(5), (b)(6), and 3238.)

**COUNT FOUR**

**RECEIPT OF MILITARY-TYPE TRAINING FROM A FOREIGN TERRORIST ORGANIZATION (AL SHABAAB)**

8. From in or about July 2011, up to and including in or about December 2015, in an offense occurring in and affecting interstate and foreign commerce, begun and committed in Somalia and elsewhere outside of the jurisdiction of any particular State or district of the United States, MAALIK ALIM JONES, the defendant, who will be first brought to and arrested

in the Southern District of New York, knowingly and willfully received military-type training from and on behalf of al Shabaab, which was designated by the United States Secretary of State as a foreign terrorist organization on February 26, 2008, to wit, JONES received training in the use of weapons, and in combat, from other members of al Shabaab.

(Title 18, United States Code, Sections 2339D(a), (b)(3), (b)(5), (b)(6), and 3238.)

**COUNT FIVE**

**POSSESSING, CARRYING, AND USING FIREARMS DURING AND IN RELATION TO A CRIME OF VIOLENCE**

9. From in or about July 2011, up to and including in or about December 2015, in an offense begun and committed in Somalia and elsewhere outside of the jurisdiction of any particular State or district of the United States, MAALIK ALIM JONES, the defendant, who will be arrested and first brought to the Southern District of New York, willfully and knowingly, and during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the offenses charged in Counts One through Four of this Complaint, did use and carry a firearm, and, in furtherance of such crimes, did possess, carry, and use a firearm, and did aid and abet the use, carrying, and possession of a firearm in Somalia, to wit, an AK-47 assault rifle that was capable of automatically firing more than one shot without manual reloading, and rocket-propelled grenades ("RPGs").

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (A)(ii), (B)(i), 3238, and 2.)

The bases for my knowledge and the foregoing charges are as follows:

10. I am a Special Agent with the FBI, assigned to the FBI's Joint Terrorism Task Force ("JTTF"). I have been employed by the FBI for more than five years and have been assigned to a counter-terrorism squad during that time, working exclusively on terrorism-related matters and investigations involving crimes against the United States. Based on my

training and experience, I have become knowledgeable about criminal activity, particularly violations of the federal terrorism statutes. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers and other individuals, and upon my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations with others and statements by others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**AL SHABAAB**

11. During the course of my investigation, I have become familiar with the foreign terrorist organization, al Shabaab, through a variety of sources, including, but not limited to, FBI investigations of members and associates of al Shabaab, public source reporting, and debriefings of persons who have been associated with al Shabaab. From these sources, I have learned that al Shabaab is an international terrorist organization based in Somalia. Specifically, I have learned the following:

a. For most of the past fifteen years, Somalia has lacked a stable central government and has been vulnerable to intense civil and sectarian violence. In 2004, the Transitional Federal Government (the "Somali TFG") was established in Somalia under international auspices. However, a loose coalition of violent Islamist insurgents known as the Islamic Courts Union fought against the Somali TFG, and took control of much of southern Somalia. Over time, that loose coalition emerged as the terrorist organization known as al Shabaab.

b. Al Shabaab has relied on violence -- targeted assassinations of civilians and journalists, and the use of improvised explosive devices, rockets, mortars, and automatic weapons -- to undermine the Somali government, quell the Somali population, and force the withdrawal of foreign troops. In late 2008, for example, al Shabaab caused to be

disseminated a videotape depicting the slow decapitation of an accused spy. Al Shabaab has claimed responsibility for multiple suicide bombing attacks, including an attack on Burundian peacekeepers in Mogadishu on April 8, 2008; five simultaneous suicide bombings targeting government, Ethiopian, and United Nations facilities on October 29, 2008; and another suicide attack against Burundian peacekeepers on February 22, 2009. Al Shabaab has declared that its ultimate goal is the imposition of Sharia, or strict Islamic law, throughout Somalia.

c. Al Shabaab's former leader, Aden Hashi Ayrow, who had trained with al Qaeda in Afghanistan prior to 2001, called for foreign fighters to come to Somalia to join al Shabaab in a "holy war" against the Ethiopian and African Union forces in Somalia. Ayrow's call was echoed by al Qaeda's leadership, including Usama bin Laden and Ayman al-Zawahiri. As a result of al Shabaab's recruitment efforts, men from other countries, including the United States, have traveled to Somalia to engage in violent jihad.

d. On February 26, 2008, the United States Secretary of State designated al Shabaab as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act, as amended, and as a Specially Designated Global Terrorist under Section 1(b) of Executive Order 13224, as amended. Al Shabaab remains a designated FTO as of the filing of this complaint.

e. Since that designation, al Shabaab has made numerous public statements demonstrating an intent to harm the United States. For example, in or about April 2009, al Shabaab declared that it was responsible for mortar attacks against a United States Congressman who had been visiting Somalia. Similarly, after an al Shabaab member was killed in or about May 2008, al Shabaab leaders declared that the mujahideen would "hunt the U.S. government" and that governments supporting the United States and Ethiopia should keep their citizens out of Somalia. On April 5, 2008, in response to the United States Secretary of State's designation of al Shabaab as an FTO, al Shabaab released a statement that declared a campaign against the United States.

f. On or about July 12, 2010, an al Shabaab

spokesman claimed responsibility for the suicide bombings that took place in Kampala, Uganda, on July 11, 2010, which killed approximately 74 people, including an American citizen. On or about September 25, 2013, an al Shabaab spokesman claimed responsibility for the attack on a shopping mall in Nairobi, Kenya, on September 21, 2013, which killed approximately 72 people and wounded at least 175 people, including some American citizens.

g. In addition, al Shabaab has engaged in attacks against forces of the Kenyan Government. For example, in the early morning hours of on or about June 14, 2015, al Shabaab fighters ambushed a Kenyan Defense Force base in Lamu County, Kenya, using various weapons, including AK-47 rifles and rocket-propelled grenades (the "Lamu Attack"). Two Kenyan Defense Force soldiers were killed in the attack.

12. Based on my review of a videotape which was posted on the Internet on or about February 9, 2012, and which was entitled, "From the two shaykhs, Abu-Zubayr and Ayman al-Zawahiri, may god protect them both," I understand that an individual identified as "Shaykh Abu-Zubayr, may God protect him," whom I believe to be the then-Emir of al Shabaab, Ahmed Abdi Godane, a/k/a "Mukhtar Abu Zubair," swore allegiance to Ayman al-Zawahiri, the Emir of al Qaeda. In that same video, al-Zawahiri stated that al Shabaab "will hereby merge into al Qa'ida." Based on my role in this investigation, I understand this video to announce publicly the merger of the two organizations.

Jaysh Ayman Unit

13. Based on my training and experience, my communications with cooperating witnesses, and my review of reports of interviews that other agents have conducted, I have also learned that al Shabaab maintains a unit known as Jaysh Ayman, which functions as a specialized fighting force within al Shabaab. Jaysh Ayman is responsible for carrying out commando attacks and cross-border raids in which fighters, among other things, travel across the land border between Somalia and Kenya to target individuals and carry out attacks in Kenya. Among the recent attacks that have been carried out by Jaysh Ayman fighters are: (i) a June 16, 2014 attack in which al Shabaab

fighters opened fire in a hotel bar in Mpekatoni, Kenya, killing approximately forty people; (ii) a July 2014 attack in Hindi, Keyna, in which approximately twelve al Shabaab fighters opened fire at a trading center and set fire to government buildings and a church, killing nine people; and (iii) the Lamu Attack, described in Paragraph 11(g) above.

**OVERVIEW OF THE DEFENDANT'S SUPPORT FOR AL SHABAAB**

14. Based on my review of government records, including passport application records obtained from the United States Department of State, I have learned that MAALIK ALIM JONES, the defendant, is a United States citizen who was born in the State of Maryland and resided in Maryland as recently as 2011.

15. Based on my involvement in this investigation, including but not limited to my conversations with other law enforcement officers and cooperating witnesses, as well as my review of documents prepared by other law enforcement officers, and as set forth in more detail below, I have learned the following:

a. In or about July 2011, MAALIK ALIM JONES, the defendant, traveled via commercial aircraft from the United States to Kenya, with stopovers in Morocco and the United Arab Emirates. After arriving in Kenya, JONES traveled by land from Kenya to Somalia.

b. From at least in or about August 2011 through at least in or about December 2015, JONES trained, worked, and fought with al Shabaab in Somalia.

c. Among other things, JONES received military training at an al Shabaab training camp; become a member of al Shabaab's fighting force known as Jaysh Ayman, see supra Paragraph 13; and participated in combat against soldiers of the Kenyan government on behalf of al Shabaab.

d. During his time with al Shabaab, JONES was recorded in at least two videos in which he is depicted with other al Shabaab fighters. As described further in Paragraph 23 below, in one of these videos, JONES possessed and carried a

firearm, and also is later seen with several al Shabaab fighters who participated in the Lamu Attack described above.

**DEPARTURE FROM THE UNITED STATES AND TRAVEL TO SOMALIA**

16. Based on my review of travel records obtained from United States Customs and Border Protection, I have learned that on or about July 28, 2011, MAALIK ALIM JONES, the defendant, traveled via commercial aircraft from John F. Kennedy International Airport in Queens, New York, to Mohamed V. International Airport in Casablanca, Morocco.

17. Based on my review of travel records obtained by the FBI, I have learned that on or about August 4, 2011, MAALIK ALIM JONES, the defendant, traveled via commercial aircraft from Dubai, United Arab Emirates, to Nairobi, Kenya.[1]

18. Based on my review of a report of a December 2015 interview of MAALIK ALIM JONES, the defendant, which is described in further detail below, I have learned that JONES subsequently traveled by taxi and bus from Nairobi, Kenya to Somalia. Based on my training and experience, and my involvement in prior investigations, I have learned that traveling over the land border between Kenya and Somalia is a common travel route for foreign fighters who are traveling to Somalia in order to join al Shabaab.

**VIDEOS RECOVERED FROM LAMU ATTACK PERPETRATOR**

19. Based on my communications with other law enforcement agents, I have learned that in or about June 2015, the FBI obtained approximately seven video files recovered from electronic media that were seized from the body of a deceased al Shabaab fighter who participated in and was killed in the Lamu Attack. Two of these video files are discussed below, where they are referred to as the Shirwa Sermon Video and the Reunion Video.

20. Based on my review of the aforementioned videos, draft Swahili-to-English translations of the audio portions of

---

[1] I have not obtained or reviewed records reflecting travel by JONES from Morocco to the United Arab Emirates.

those videos, law enforcement reports, and public source information, I have learned that the videos depict al Shabaab fighters engaging in various activities in preparation for the Lamu Attack. Among the activities depicted in the videos are: (i) the assembly of an improvised explosive device; (ii) speeches and sermons delivered to motivate al Shabaab fighters; (iii) the handling and cleaning of firearms; and (iv) a portion of a firefight that occurred during the Lamu Attack.

21. Based on my review of the aforementioned videos and draft translations of their content, I have also learned, in substance and in part, the following:

<u>The Shirwá Sermon Video</u>

a. One of the videos recovered from the al Shabaab fighter who died in the Lamu Attack, which is approximately fifty seconds in length, is titled "the Shirwa Sermon" (the "Shirwa Sermon Video"), and depicts an individual delivering a sermon to a crowd of male fighters ("CC-1").

b. Based on, among other things, my review of passport and customs photographs of MAALIK ALIM JONES, the defendant, I believe JONES is one of the individuals depicted in the Shirwa Sermon Video. JONES has also identified himself in the video, as described in Paragraph 23 below. The Shirwa Sermon Video depicts JONES sitting behind CC-1 throughout the entire recorded portion of CC-1's sermon. At various times during the sermon, JONES can be seen smiling and nodding in apparent agreement with statements made by CC-1.

c. During the sermon, CC-1 stated, among other things: "You see Kenyans are now crying. . . . We have not begun to do anything. . . . The war is just beginning. . . . The Kenyans are crying like young children. . . . Their hearts are filled with fear . . . unbelievers. . . . Glory be to God. Right now Allah has granted Muslims, if you have a voice be heard. . . . If you have manhood, defend it."

<u>The Reunion Video</u>

d. A second video, which is approximately three minutes and twenty-four seconds in length, is entitled "Reunion"

(the "Reunion Video"). The Reunion Video depicts, among other things, various individuals, believed to be al Shabaab fighters, greeting each other, hugging each other, and carrying firearms.

e. Among the individuals depicted in the Reunion Video is an individual who I believe, based on my review of the aforementioned passport and customs photographs of JONES, to be JONES.[2] JONES has also identified himself in the video, as described in Paragraph 23 below.

f. In an early portion of the video, JONES is depicted walking with a firearm and placing the firearm on the ground.

g. In a later portion of the video, JONES is depicted wearing a black t-shirt and hugging and interacting with other males, including CC-1.

**COOPERATING WITNESS'S IDENTIFICATION OF CC-1**

22. From my review of written law enforcement reports and my conversations with other agents, I have learned that a cooperating witness ("CW-1")[3] has identified CC-1 as an al Shabaab fighter. Specifically, based on my review of reports of interviews of CW-1 conducted by other agents, and my conversations with those agents, I have learned, among other things, the following:

---

[2] I also believe the individual depicted in the video to be JONES for the additional reason that the individual in the video is missing most of his left middle finger. Based on my communications with law enforcement agents who conducted a December 2015 interview of JONES, I know that JONES is missing most of his left middle finger.

[3] CW-1 pled guilty to an Indictment charging CW-1 with multiple terrorism-related offenses, pursuant to a cooperation agreement with the United States Attorney's Office for the Southern District of New York. CW-1 has not yet been sentenced. Information provided by CW-1 generally has proved to be accurate, in that it has been corroborated by independent evidence.

a. In 2007, CW-1 traveled from the United Kingdom to Somalia to join the Islamic Courts Union movement. In July or August 2007, CW-1 began receiving military training at a camp located in an isolated jungle in Somalia. The faction that ran that military training camp was one of a number of loosely associated groups within the Islamic Courts Union, which ultimately would become unified under al Shabaab.

b. In March 2009, CW-1 became the commander of al Shabaab's foreign fighters (i.e., non-native Somalis and/or expatriated Somalis) in Mogadishu, Somalia. During this period, CW-1 attended high-level al Shabaab meetings, and interacted with high-ranking members of al Shabaab.

d. When shown numerous photographs of CC-1 from screenshots of the videos described above, see supra Paragraph 21, CW-1 identified CC-1 as an individual who had fought under CW-1's command in numerous battles. CW-1 further stated, among other things, that CC-1 was a leader among al Shabaab's foreign fighters.

**THE DEFENDANT'S ARREST AND INTERVIEW**

23. Based on my communications with other law enforcement agents, and my review of written reports prepared by other agents, I have learned, in substance and in part, the following:

a. According to law enforcement authorities in Somalia, on or about December 7, 2015, MAALIK ALIM JONES, the defendant, was detained and taken into custody by Somali authorities in Baraawe, Somalia while he was attempting to procure a boat to depart Somalia for Yemen.

b. Following JONES's arrest, Somali authorities permitted United States law enforcement personnel, including two FBI agents ("Agent-1" and "Agent-2"), to conduct an interview of JONES outside the presence of Somali authorities. JONES agreed to speak with Agent-1 and Agent-2, was advised of his Miranda rights, agreed to waive those rights, and spoke with law enforcement agents in English.

24. Based on my review of a draft report prepared by

JONES returned to service with al Shabaab and his assigned unit, Jaysh Ayman.

j. Thereafter, JONES attempted to travel to Yemen.

k. When shown a portion of the Shirwa Sermon Video referenced above, JONES identified himself in the video. JONES also identified the person giving the sermon, i.e., CC-1, as "Shirwa," and stated that "Shirwa" was a unit commander.

l. When shown a portion of the Reunion Video referenced above, JONES identified himself in the video. JONES also described CC-1 by the name "Shirwa," and stated that "Shirwa" and two other individuals depicted in the Reunion Video fought and died in the battle in Lamu, Kenya.

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for MAALIK ALIM JONES, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

Mary E. Boese

MARY BOESE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
12th day of December 2015

Ronald Ellis

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK