IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | \| | 16 Cr. 19 (PGG) |
| | \| | |
| | \| | The Hon. Paul G. Gardephe |
| v. | \| | |
| | \| | |
| MAALIK ALIM JONES, | \| | **NOTICE OF MOTION** |
| | \| | |
| Defendant. | \| | |

**DEFENDANT MAALIK ALIM JONES' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS STATEMENTS**

SEAN M. MAHER
*Counsel for Defendant*
 *Maalik Alim Jones*

The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

**Preliminary Statement**

Maalik Alim Jones, by undersigned counsel, respectfully submits this memorandum of law in support of Mr. Jones' motion to suppress the December 2015 statements made in response to custodial questioning by Somali and U.S. law enforcement agents.

## 1.     Factual Background

The government alleges that Mr. Jones, a U.S. citizen, travelled to Somali in 2011. Criminal Complaint ("CC") ¶ 15(a), attached as Exhibit A.  The government further alleges that Mr. Jones became a member of an al Shabaab military unit known as Jaysh Ayman, received military training, and participated in at least one armed raid against Kenyan soldiers. CC ¶¶ 11(g), 13, 15(b)-(d); *see* Indictment Counts 1-5, attached as Exhibit B.

In its discovery disclosures, the government has provided the defense notice of two statements made by Mr. Jones: ▮▮▮▮▮▮

▮▮▮▮▮▮

attached as Exhibit C,[1] ▮▮▮▮▮▮

▮▮▮▮▮▮

▮▮▮▮▮▮ attached as Exhibit D.

In addition, today the government notified me on the phone that ▮▮▮▮▮▮

---

[1] In accordance with the Court's order pertaining to non-classified information, Doc. No. 18, Exhibits C and D are being filed under seal and certain passages in this filing and in undersigned counsel's declaration are being redacted in the publically filed documents. ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮ The government has confirmed with undersigned counsel that it does not presently intend in its case-in-chief at trial to offer any evidence concerning ▮▮▮▮▮▮. In the event that the government's position changes, it is respectfully requested that Mr. Jones be permitted to reserve his right to challenge ▮▮▮▮▮▮

████████████████████████████████████████ the government may seek to introduce at trial.  The government further informed me that I should expect to receive ████████████ ████████████████ sometime today.  ████████████████ have not been provided or referenced in any previous discovery disclosure.  The defense requests the right to reserve arguments concerning the admissibility of ████████████████

**A.     Interrogations in Baraawe, Somalia**

On or about December of 2015, Mr. Jones was placed into custody by Somali authorities in the town of Baraawe.  Declaration of Maalik Jones ¶ 4, attached as Exhibit E.  The Somali officials locked Mr. Jones alone in a cell in a police station. *Id.* ¶ 5.  The officials provided Mr. Jones only one meal a day, which consisted of some bread and some soup. *Id.*

While Mr. Jones was in custody in the police station, the Somali officials interrogated Mr. Jones at least once a day. *Id.* ¶ 6.  The Somali officials kept Mr. Jones handcuffed during interrogations. *Id.*  The Somali officials threw Mr. Jones around a room, pushed him against a wall, and drew guns on Mr. Jones while asking him questions. *Id.*  At one point an official held a gun to Mr. Jones' head, inches from his skull, and told him that they were going to kill him if he didn't talk to them. *Id.*  These actions placed Mr. Jones in fear for his life. *Id.*

Mr. Jones remained detained at the police station for two to three days and was interrogated every night. *Id.* ¶ 7.  At no time did anyone tell Mr. Jones that he had the right to remain silent or the right to have an attorney. *Id.* ¶ 8.

**B.     Interrogations in Mogadishu, Somalia**

At some point, Mr. Jones was transported to Mogadishu in a helicopter. *Id.* ¶ 9.  Mr. Jones was taken to a building, likely an intelligence agency headquarters, and was detained in a locked room on the bottom level of the building. *Id.* ¶ 10.  The room had a small mattress and a

2

desk. *Id.*

In Mogadishu, the interrogations resumed, but with different officials. *Id.* ¶ 11. Several different Somali officials interrogated Mr. Jones and gave him contradictory and confusing messages. *Id.* For instance, one official told Mr. Jones that he was going to be given amnesty; another official told Mr. Jones that he was going to be turned over to a foreign government to be killed. *Id.* One official told Mr. Jones that the Somalis were not arresting him, but that he was not free to leave. *Id.* ¶ 12.

Mr. Jones was detained in Mogadishu for several days. *Id.* ¶ 13. Every day he was interrogated by Somali officials. *Id.* ¶ 14. At no time did any of the Somali officials tell Mr. Jones that he had the right to remain silent or the right to have an attorney. *Id.*

During Mr. Jones' detention in Mogadishu, one Somali government official told Mr. Jones that the governments of Kenya and Djibouti were planning to kidnap him. *Id.* ¶ 15. The Somali official told Mr. Jones that the Americans were coming for him and that if he didn't help the Americans, the Somali government was powerless to protect Mr. Jones from any of the people or governments who the official said wanted to kidnap and kill Mr. Jones. *Id.* These statements placed Mr. Jones in fear for his life. *Id.*

Another Somali government official told Mr. Jones about an amnesty program for members of al Shabaab. *Id.* ¶ 16. The official said that he was in charge of defectors from al Shabaab and that the Somali government had a program for former members of al Shabaab in which such persons were granted amnesty, were allowed to live normal lives, and were not imprisoned. *Id.* The official said that if Mr. Jones helped the Americans, Mr. Jones would have to serve a six month sentence in Somalia, but it would not be a prison sentence: the Somali government would provide Mr. Jones a house in which he could live with his family. *Id.*

3

### C. Interrogation by American officials

After Mr. Jones had been confined in Mogadishu for a few days, one of the Somali government officials told Mr. Jones that he was about to meet with some people from the American consulate because the Americans from the consulate wanted to see how he was doing. *Id.* ¶ 17. The Somali official did not tell Mr. Jones that he would be meeting with American law enforcement officials. *Id.*

Mr. Jones was then taken to a different room where two Americans were waiting for him. One of the Americans told Mr. Jones that he was not safe there. *Id.* ¶ 18. The American told Mr. Jones that the Somalis could sell Mr. Jones to the Kenyans or Djiboutians whenever they wanted and that Mr. Jones would be sold and killed if he did not cooperate with the Americans. *Id.* ¶ 18.

At some point while Mr. Jones was in the room the American gave Mr. Jones a piece of paper to read and sign. *Id.* ¶ 19. Mr. Jones signed it and agreed to talk. *Id.* Mr. Jones states that did so because he thought he would receive amnesty if he did and be killed if he didn't. *Id.* Had Mr. Jones not been threatened and induced, he would not have agreed to waive his rights and speak. *Id.*

## 2. Legal Argument

In December of 2015, Somali and U.S. law enforcement agents illegally interrogated Mr. Jones, thus his statements should be suppressed. In the alternative, Mr. Jones requests an evidentiary hearing concerning this matter.

Due process forbids the use at trial of a confession that has been obtained from a defendant by coercion. *Brown v. Mississippi*, 297 U.S. 278, 286 (1936). Coerced confessions also implicate the Fifth Amendment's privilege against self-incrimination. *See Miranda v.*

4

*Arizona*, 384 U.S. 436, 460-63; *Bram v. United States*, 168 U.S. 532, 549 (1897).

A defendant challenging the voluntariness of a confession has the right to "a fair hearing and a reliable determination on the issue of voluntariness." *Jackson v. Denno*, 378 U.S. 368, 377 (1964). In looking at the totality of the circumstances, the Court should ask whether the confession is "the product of an essentially free and unconstrained choice by its maker." *Green v. Scully*, 850 F.2d 894, 900 (2d Cir. 1988). Relevant factors include: "the accused's age, his lack of education or low intelligence, the failure to give *Miranda* warnings, the length of detention, the nature of the interrogation," the accused's "mental vulnerability" and "medical distress," and officers' conduct. *United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012); *United States v. Scott*, 624 F. Supp. 2d 279, 284-85 (S.D.N.Y. 2008).

To establish that a defendant validly waived his *Miranda* rights, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving the right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). In addition, any evidence derived from the illegally obtained statement should be suppressed under the "fruit of the poisonous tree" doctrine. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

The government may not circumvent the Fifth Amendment and *Miranda* in foreign interrogations; the purpose behind the *Miranda* rule extends to foreign interrogations involving U.S. officials. *In Re Terrorist Bombings of U.S. Embassies in East Africa,* 55F2.3 d 177,203 (2d Cir. 2008) ("When U.S. law enforcement agents or officials are involved in overseas interrogation . . . the deterrence rationale retains its force.") Consequently, U.S. personnel are subject to *Miranda's* dictates whenever they operate through foreign interrogators and then seek

5

to admit the resulting statements at trial. *Un-Mirandized* statements that are the product of a joint venture between American and foreign law enforcement must be suppressed. *United States v. Yousef,* 327 F.3d 56, 145 (2d Cir. 2003).

Mr. Jones did not voluntarily submit to the questioning by the Somali and American officials. Mr. Jones had been held in custody for days and was interrogated every day by Somali officials. The Somali officials never informed Mr. Jones of any of his *Miranda* rights. The Somali officials subjected Mr. Jones to harsh conditions of confinement, which included one small meal per day, being locked alone either in a cell or in a room, and being interrogated at night. Mr. Jones was subjected to physical abuse, such as being thrown against a wall, and to direct threats to his life, including having a gun pointed at his head, while alternatively being told that cooperation would lead to amnesty and no prison time. After days of this treatment, the Somali officials falsely told Mr. Jones that he had a visit from the U.S. Consulate to check on him and did not disclose that the Americans were law enforcement officials who would be questioning Mr. Jones in connection to a criminal investigation. When left in the presence of the Americans, Mr. Jones was told by one of the American officials that the Somalis may sell him off to the Kenyans or Djiboutians, who would then kill him. There also is an open question as to whether the Somali officials were acting as agents in a joint venture with U.S. authorities.

The totality of the circumstances indicates that Mr. Jones was in custody and that Mr. Jones's statements were not "the product of an essentially free and unconstrained choice by its maker." In addition, under these circumstances Mr. Jones did not freely and voluntarily waive his *Miranda* rights, including his right to counsel, for any of the statements, notwithstanding ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Accordingly, under the Fifth and Sixth Amendments, *Miranda*, and supporting caselaw, all the statements that Mr. Jones made in

6

December of 2015 should be suppressed as well as all evidence derived from the illegally obtained statements. In the alternative, Mr. Jones respectfully requests an evidentiary hearing concerning these issues.

## Conclusion

WHEREFORE, Mr. Jones respectfully requests that the Court grant his motion to suppress, or, in the alternative, conduct an evidentiary hearing on this matter, and grant such other and further relief that the Court may deem just and proper.

Dated:   New York, New York
         May 19, 2017

>                                   Respectfully submitted,
>
>                                   _____/S/_____
>                                   SEAN M. MAHER
>                                   *Counsel for Defendant*
>                                        *Maalik Alim Jones*
>                                   The Law Offices of Sean M. Maher, PLLC
>                                   233 Broadway, Suite 801
>                                   New York, NY 10279
>                                   (212) 661-5333
>                                   (212) 227-5808 fax