# THE LAW OFFICES OF SEAN M. MAHER, PLLC

May 15, 2018

**VIA ECF**

Honorable Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007-1312

    RE:   *United States v. Maalik Jones*, 16 Cr. 019 (PGG)
              **Sentencing submission of Maalik Jones**

Dear Judge Gardephe:

    The issue before the Court is whether 30 years in prison is a sentence that is sufficient but not greater than necessary to meet the goals of sentencing when considering the unique characteristics and circumstances of Mr. Jones and this case. In light of all of the 3553(a) factors, it is respectfully submitted that a Guidelines sentence would be unduly harsh and that 30 years' imprisonment is more than sufficient to meet the goals of sentencing.

***

    Young Maalik Jones sits at his school desk. His father bursts through the door, anger palpable. His father makes a bee-line for Maalik, berates Maalik in front of the class, palms the back of Maalik's head, and slam's Maalik's head into the desktop. Maalik remains frozen with his face smashed into the desk; the room is quiet - no one makes a sound. Not the teacher. Not any of the students. Maalik's father continues mocking Maalik in front of his classmates and teacher. Maalik waits an eternity until his father moves on, leaving Maalik behind in the classroom. Maalik's father does not flee the school in fear or shame for committing an assault against his own child; he casually walks back to his own office down the hall. The Principal's Office.

***

    "Traumatic." Single word. When asked what childhood was like for her younger brother Maalik, herself, and her other eight siblings, Baiyina Jones gave a single word response: "traumatic."[1] Upon hearing her recount life in the Jones household, one can't but help think of another word: horrific.

---

[1] Facts contained in this letter were gathered from interviews with Baiyina Jones, Tauhid Jones, and Maalik Jones, as well as from the presentence report and other documents. According to

# THE LAW OFFICES OF SEAN M. MAHER, PLLC

---

Maalik Jones is one of ten children who were raised in a row house within Baltimore City. Their house was two to three blocks from Murphy Homes, one of the most dangerous high rise housing projects in Baltimore. Baiyina remembers that they had no hot water in the house and sometimes had no running water. There was no heat in the winter and the electricity was off about 50% of the time.

As she allowed herself to go back over her painful memories, Baiyina recalled that "our home didn't have a working toilet for about two years and we had to use a bucket to urinate and poop in. We had no toilet tissue on the regular so we used a telephone book softened with water to clean ourselves in place of tissue." With no gas or electricity, they would cook food on a propane stove. "We heated cans of things like corn and vegetables on a heater that was in our living/dining room," Baiyina stated. "We'd open the can with a knife and sit it on the heater to warm."

According to Baiyina, the lights were out so often that the children acclimated by hovering by the front window that was closest to the outside street light. In the evening, they did their homework under the street light. If they didn't get their homework done, they would wake up early in the morning to do their homework, but then would get to school late. Tardiness at their Islamic community school resulted in automatically being kept out of class. Baiyina believes that she and her siblings all did poorly in school because they missed so many first period classes from being late as they scrambled to get their homework done on time. Maalik's school records reflect the following "lateness" statistics:[2]

1st Grade -   63
2nd Grade -   84
3rd Grade -   29
4th Grade -   23

Baiyina vividly remembers how hungry she, Maalik, and their siblings were as kids. She states that she never knew when the next meal was coming. A food bank at school was the only consistent place the kids were fed. Baiyina also remembers how "ratchety and ragged" their hand-me-down clothes were - so much that the school instituted a uniform policy to alleviate everyone's collective embarrassment of how poorly the Jones children were clothed.

As an adult, Baiyina remarks that the physical deprivations that Maalik and his siblings endured were not the cruelest aspects of their childhood, but rather, it was how they as a family were hidden away by their father as if they were a source of such humiliation that the outside world could not know of their existence.

---

Baiyina, there is only one photograph that "anyone ever bothered to take" of Maalik and his brothers when they were kids; it is attached as Exhibit E.

[2] School records of Maalik Jones are attached as Exhibit F. Because of the sensitive personal information in the records, it is requested that the Court permit Exhibit F to be filed under seal.

# THE LAW OFFICES OF SEAN M. MAHER, PLLC

Maalik's father Bernard Jones was a leader in their tight-knit Islamic community.  He was an assistant Imam, but served periods of time as the acting Imam of the mosque.  Bernard was the Principal of the Islamic community school affiliated with the mosque - the same school attended by Maalik and his siblings.  Bernard held other jobs as well, such as being a social worker and a group home employee.

Bernard was an intelligent, strong-willed, prideful man who believed it was his sole responsibility to provide for his family.  The problem for the Jones children, however, was that they were not Bernard's only family.  Bernard did not live in the row house with Phyllis and their ten children.  Instead, he lived with his other wife, her five children, and the one son, Tariq, he shared with his second wife.  Baiyina states that Bernard did not even keep a toothbrush or clothes in their row house, though he periodically would stop by the row house, especially if one the kids had caused some type of trouble.

Bernard made a choice to favor his second family over his first, a choice that haunts Maalik and his siblings to this day.  As a leader in the community, Bernard, along with his entire family, was expected to socialize with other community members, however Baiyina recalls how Bernard did everything to keep the Jones children hidden away.

A vicious cycle ensued.  Bernard did not make enough money to support two families, especially two families with 16 total children.  Bernard, too proud to rely on government support, forbade Maalik's mother Phyllis from applying for welfare or any government assistance, yet did not give her and the kids enough money to live on.  As the deprivation and degradation of Maalik's neglected family increased, Bernard increasingly shunted them from public view.  Baiyina felt like she and her siblings were social outcasts who were so embarrassing to their father that they could not even have simple social connections with their peers.

It was not only the knowledge that their father favored his other family that hurt so deeply, but also it was the daily in-your-face reminders of the disparity of their father's affection.  The other family lived in the same community and all of the children attended the same small Islamic school as the Jones children.  Baiyina remembers how, while she, Maalik, and their siblings had to walk almost a mile home from school, their father would regularly drive past them as he drove his other children home from the same school.

Maalik loved his half-brother Tariq even though Bernard clearly favored Tariq over Maalik.  Bernard often told Maalik to look after Tariq, and Maalik saw first-hand how Bernard gave Tariq money, gifts, and privileges that he never gave Maalik or his other siblings.  If Bernard ever thought that Maalik mistreated Tariq in any way, Bernard would punish Maalik severely, including punching and beating him.

The juxtaposition of such disparate treatment was, to say the least, quite difficult for Maalik.  It stung his heart that Maalik routinely was mistreated by his own older brothers, who hit, teased, and stole food from Maalik, yet his father never stepped in to protect Maalik.

Maalik and Baiyina both believe that their mother loved them and did her best, but she also bore some responsibility for the atmosphere of fear that permeated the row house.  Phyllis

THE LAW OFFICES OF SEAN M. MAHER, PLLC

---

required the kids to do various chores, such as cleaning up, though no amount of cleaning ever alleviated the squalor of the house.  When one of the children failed to perform a chore as expected, a standard punishment followed: 100 lashes with a belt. Baiyina has not forgotten the welts, bruises, and cuts that were inflicted. Sometimes, if a belt wasn't handy, other implements were utilized, such as broom sticks and extension cords.  Baiyina remembers that when her mother hit them with a broomstick, the standard beating was 10 broomstick swings and hits.

Today, Baiyina believes that her mother had mental health issues that could have been addressed medically.  Phyllis herself also likely suffered acute abuse as a child.

Sometime before Maalik was five year old, Child Protective Services ("CPS") removed the children from the household.  Baiyina remembers staying in a shelter and then for a month or so with her grandmother, and then all of the kids and their mother staying in an extra room of a family friend.  Looking back, Baiyina thinks they were probably homeless for a while before CPS sent them all back to the row house after about six months.

It was in this general time frame that Maalik's two immediately-younger brothers were diagnosed with lead poisoning from ingested lead paint.  "Most of the time our lights were off and the heat didn't work," writes Maalik's brother Tauhid.[3] "We use to sit at the top of the stairs and eat the wall that had lead in it."[4]

To this day, Baiyina believes that Maalik also suffered from lead poisoning, but no one ever tested Maalik.

\*\*\*

As confirmed in the PSR, Maalik's memory of his childhood home mirrors that of his older sister Baiyina.  Another aspect of their childhood that stands out is how all the siblings had to fend for themselves, from scrambling for food to surviving the dangers of living in a high-crime neighborhood.

Maalik recalls being teased and ridiculed by other kids for being Muslim.  Home was not a haven; his own siblings, especially his older brothers, also ridiculed, beat, and tormented Maalik.

As a young child, Maalik played around the block with no parental supervision.  Tauhid writes the following:

> Growing up, before the age of I would say 12, our life was extremely hard. Our past time mostly was unsupervised activities outside, like playing in the dirty drug infested alleys in West Baltimore. We watched

---

[3] Letter of Tauhid Jones, attached as Exhibit C.
[4] *Id.*

233 BROADWAY, SUITE 820, NEW YORK, NEW YORK 10279
(212) 661-5333 • (212) 227-5808 FAX
WWW.SEANMAHERLAW.COM

THE LAW OFFICES OF SEAN M. MAHER, PLLC

junkies everyday to see if they would fall to the ground from what they were high on.[5]

One of the places Maalik and his friends hung out at was a lot behind a nearby taxi dispatch center. When Maalik was around ten years old, one of his friends threw a bottle, which smashed a window. A man came out and chased after the kids – everyone got away except for Maalik. As described in the PSR, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6]

\*\*\*

One aspect of his childhood that makes Maalik smile is his memory of taking care of cats. As a young boy, Maalik loved animals, especially cats. He spent so much time with cats that he was called Cat Boy. Maalik took in stray cats and nurtured them to full health. Maalik would take care of kittens that were born in the house, feed and care for them, and give them away to families on the block. Baiyina loved having the cats around because they helped with the perpetual mouse infestation in the row house.

\*\*\*

At age nineteen, Maalik was religiously married for the first time. His wife, Salah, went to the same school and was part of the same Islamic community. After about a year and a half, they both decided that the marriage wasn't working. They separated and received a religious divorce; they never were civilly married.

Shortly after his divorce, Maalik's brother and their Imam initiated a match between Maalik and a woman named Hanane, who was from Morocco. Maalik and Hanane married and have two children together: a ten year old son and an eight year old daughter. Maalik and Hanane are no longer together. Maalik has remained in touch with his children through sending letters and cards to each other.

\*\*\*

As required by his parents, Maalik attended the Islamic Community School. Maalik graduated from high school in 2002 with a rank of 4/5, meaning that he was fourth-ranked out of the entire class of five students. Maalik completed some post-high school academic coursework, including classes at Baltimore Community College, but had to drop out because he could not afford the tuition. He completed a six-month commercial driver's license program and earned his CDL. He also earned certificates relating to outdoor electrical systems.

Right after high school, Maalik worked for about three years stocking shelves at a Stop and Shop supermarket and then at a Walmart. He then was hired by a local utility company to do

---

[5] *Id*.

[6] It is requested that the preceding passage be accepted under seal due to the sensitive personal information involved.

THE LAW OFFICES OF SEAN M. MAHER, PLLC

electrical subcontracting work.  Maalik learned how to do maintenance on outdoor electric poles and towers.  After obtaining his CDL, Maalik worked for several years as a delivery truck driver, which paid better than the utility company.

Maalik has been a loving older brother and positive role model for Tauhid.  When Tauhid moved out of the row house at age 16, Maalik invited Tauhid to live with him.  Maalik taught Tauhid the skills so that he could work at the utility company with Maalik.  Tauhid writes that "I owe it to him for taking the time to groom me into the man, father, son, and husband that I am today."[7]

Maalik's kind and caring nature is corroborated by his sister[8] and mother.[9]  Baiyina points out that besides taking in his brother Tauhid, Maalik took in his mother after his father divorced her.  At the same time, Maalik took in his older sister who has mental health issues.  Maalik used his own meager income to support his mother and sister as best as he could during their time of personal hardship.

\*\*\*

When Mr. Jones was taken into custody in Somalia, "he was barefoot and appeared malnourished."[10]  Upon being transferred to federal custody in New York, Mr. Jones was detained in solitary confinement on 10 South within the MCC's Special Housing Unit.  The Attorney General imposed Special Administrative Measures ("SAMs") upon Mr. Jones, isolating him completely from other detainees, other Muslims, and the entire outside world.

Thus, after being detained in a Somali jail, Mr. Jones endured close to two years of pretrial solitary confinement on 10 South.  There is no recognized algorithm to convert such harsh conditions into equivalent "regular U.S. prison time," however the toll taken on Mr. Jones is undeniable.  While in solitary confinement, Mr. Jones became very depressed; he also had trouble concentrating and remembering things.  As described in his letter to the Court, "One year on 10 South is like a lifetime in normal prison. You don't see a light at the end of the tunnel.  All you see is darkness."[11]

It is a testament to Mr. Jones's character and positive prognosis for rehabilitation that he persevered through the darkness and did not accrue any disciplinary infractions while subjected to the insanity that passes for normal on 10 South.  Mr. Jones has not engaged in acts of proselytizing a radical or violent vision of Islam among fellow inmates or anyone else. He is an introspective, quiet man who keeps to himself, is well-liked by staff, and follows the rules. This bodes well for his future reintegration into society.

---

[7] Exhibit C.
[8] Letter of Baiyina Jones, attached as Exhibit B.
[9] Letter of Phyllis Jones, attached as Exhibit D.
[10] PSR ¶ 51.
[11] Letter of Maalik Jones, attached as Exhibit A.

THE LAW OFFICES OF SEAN M. MAHER, PLLC

     In fact, a few months ago, the BOP moved Mr. Jones out of 10 South and into general population.  The SAMs were not renewed and no longer are in effect.  These changes reflect significant positive steps that Mr. Jones has made towards rehabilitation. At minimum, these circumstances are a tacit acknowledgment that Mr. Jones is not a top-level security threat warranting an effective life sentence.

\*\*\*

     Mr. Jones has expressed his sincere remorse for engaging in the charged crimes.[12]  Going further, he unequivocally states that he was wrong for believing that his religion provided any justification for violence and renounces any support for terrorism or for any group that uses violence, especially one that does so in the name of Islam.  He wants no part in any violence and has no proclivity whatsoever to commit any further criminal offenses.

     Mr. Jones is 33 years old and has no appreciable criminal history before this case. The mere imposition of the mandatory minimum sentence of 30 years on Count 3 condemns Mr. Jones to imprisonment of such a duration that he might die in prison.  Should he live to complete such a term of imprisonment, he will not be a risk for recidivism.  Mr. Jones has accepted full responsibility for his actions and is prepared to serve decades behind bars.  It is respectfully requested, however, that the Court provide a small light at the end of the tunnel for Mr. Jones and his family.

Respectfully submitted,

_____/S/_____
Sean M. Maher
*Counsel for Maalik Jones*

cc:    Opposing counsel via ECF

---

[12] *Id.*