LAW OFFICES OF
# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: llewis@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS                                            FATOUMATA MAGASSA
                                                                    *Paralegal*

November 2, 2022

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re: *United States v. Maalik Jones*,
         16 Cr. 19 (PGG)

Dear Judge Gardephe:

  This letter is respectfully submitted on behalf of defendant Maalik Jones, whom Peter E. Brill, Esq. and I represent, and responds to the government's letter filed today ("Gov't Letter") (ECF # 208) in response to the Court's Order issued yesterday (ECF # 206) directing the government to "make a supplemental submission containing [] exhibits" referenced in the government's October 27, 2022, sentencing submission (Gov't Memo") regarding the government's contention that Mr. Jones telephoned Sally Evans to inform her of her son's death in Somalia. This letter also briefly addresses a singular materially misleading aspect – a case relied on by the government – in the government's sentencing submission.

  In its sentencing submission, the government proffered that "[t]o the extent that the Court believes that additional factual presentation on this issue would be dispositive at Jones's resentencing, the Government is prepared to make a supplemental submission of the phone record exhibits that support the factual conclusions in the [Pre-Sentence Report]." Gov't Memo, at 9 n.4.

  Yet now, because it cannot provide the proof it claimed it possessed, the government retreats completely from any reliance on the purported telephone call. In fact, while it deemed it pertinent to assert that allegation at Mr. Jones's initial sentencing, *see* May 29, 2018, Sentencing Transcript ("Sentencing Tr.") (ECF # 88), at 5, and in the government's May 25, 2018, initial

LAW OFFICES OF  
**DRATEL & LEWIS**

Hon. Paul G. Gardephe  
United States District Judge  
Southern District of New York  
November 2, 2022  
Page 2 of 4

sentencing submission (ECF #86), at 8, and again in its re-sentencing submission, *see* Gov't Memo, at 9 & n.4, the government states it "is not relying on, and is not asking the Court to rely on, that call in connection with the defendant's resentencing." Gov't Letter, at 1. *See also id*. ("[t]he Court equally need not rely now on that phone call to determine" Mr. Jones's sentence").

As a result, the remainder of the government's November 2, 2022, letter is confusing, as by the government's admission it is entirely irrelevant. Moreover, contrary to the government's claims at the initial sentencing, and again in its sentencing submission, the government does not even possess proof that the phone used to call Sally Evans was the same phone Mr. Jones used to call his family.

Indeed, at this eleventh hour, compelled only by the Court's Order yesterday, the government for the first time makes the astonishing admission that "[d]uring the investigation, the Government was not able to obtain call detail records from the United Kingdom for Evans's mother's phone in order to confirm the number that called her from Somalia after Evans's death, and to compare that number with the Somali number used by Jones to call his own family." Gov't Letter, at 2.[1]

Thus, the government's claims about Mr. Jones's alleged connection to the call to Ms. Evans have been, from the outset, at best pure speculation, and are more accurately described as wholly invented, despite the government's categorical assertion, during the initial sentencing hearing, that "as to the Lamu attack, [Mr. Jones] did play a critical role after the attack in calling the mother of a deceased fighter notifying her . . ." Sentencing Tr., at 5. *See also* Gov't Memo, at 9 ("Jones called the mother of one his fellow Jaysh Ayman fighters, a British citizen named Thomas Evans who was killed in the attack, to inform her of Evans's death") *citing* Pre-Sentence Report ("PSR"), at ¶ 33.[2]

---

[1] That the government's contentions were without proof, and that the government had not even canvassed the records it possessed before making its allegations in court and in its papers, were foreshadowed by the government's November 1, 2022, letter (ECF #206) seeking an additional day to comply with the Court's Order. In that letter, the government requested the extension of time because it was "reviewing its files for pertinent records, which files include, among other things, voluminous call detail records, so that the Government can submit any relevant information."

[2] The government's citation to the PSR is without effect, since the information in the PSR of course *was provided by the government*. The government also concedes in its November 2, 2022, letter that its assertions at the initial sentencing regarding the contents of Ms. Evans's call records were not accurate *because it never possessed those records*. *See* Gov't Letter, at 2.

LAW OFFICES OF
**DRATEL & LEWIS**

Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
November 2, 2022
Page 3 of 4

In addition, the evidence contradicts nearly everything the government has represented to the Court about the issue that would implicate Mr. Jones, and established dispositively that Mr. Jones was *not* the caller. For example, as Ms. Evans stated during her interview with two FBI Special Agents (included as Exhibit 2 to the government's November 2, 2022, letter), of the "hundreds of phone calls[]" she received after her son's death (about which she learned from *a journalist*, not any phone call from Somalia, *id*., at 4), only one was from Somalia, and "[t]he man on other end of the line gave traditional Islamic greetings *then spoke in what [Ms. Evans] believed to be a foreign language*[,]" and Ms. Evans "told the man she could not understand him and the phone call was disconnected." *Id*., at 4 (emphasis added).[3] That decisive revelation – again, made today for the first time – eliminates the possibility that Mr. Jones was the caller.

Contrast that with the government's elaboration at the initial sentencing hearing that included a series of assertions that now prove to be completely fictional:

> Ms. Evans, when interviewed, *said that the person was, as she recalled, an American friend or an American co-fighter of Mr. Evans*. So, again, *the fact that it's the same number calling Jones' family, calling Evans*, and then *the fact that it is an American friend doing the notification,* that's the proof that the government has that, in fact, he called her after the attack.

Sentencing Tr., at 7 (emphasis added).

Moreover, with respect to the government's claim that any phone calls evince Mr. Jones's knowledge of the Lamu incident, *see* Gov't Letter, at 1, the government ignores the colloquy during the initial sentencing, when the issue was discussed, and when (1) the Court already stated it would "consider, for purposes of sentencing, that Mr. Jones knew about the attack on Kenyan forces in Lamu[,]" Sentencing Tr., at 10; and (2) Mr. Jones's counsel made it clear that Mr. Jones was *not* denying knowledge of the event, but rather *fore*knowledge thereof. *Id*.[4]

Also, with respect to *United States v. Pugh*, 15 Cr. 116 (NGG), an Eastern District case

---

[3] The government's November 2, 2022, letter's description of that passage – lacking any of its probative features – is as follows: "Evans's mother described that she did in fact receive one call from Somalia placed by a male speaker, that she told the speaker she could not understand him, and that the call then ended."

[4] Mr. Jones's counsel also explained why any phone records would not provide sufficient proof that Mr. Jones placed any call to Ms. Evans. *Id*., at 8.

| | |
|---|---|
| LAW OFFICES OF<br>**DRATEL & LEWIS** | Hon. Paul G. Gardephe<br>United States District Judge<br>Southern District of New York<br>November 2, 2022<br>Page 4 of 4 |

emphasized by the government at the initial sentencing, *see* Sentencing Tr., at 32, and again in its submission, at 26-27, the government conveniently cites only the District Court docket number and fails to inform the Court that upon appeal, the Second Circuit remanded the matter in 2019 for re-sentencing because the District Court had imposed the maximum sentence on both counts of conviction without providing a sufficient explanation. *United States v. Pugh*, 945 F.3d 9, 23-28 (2d Cir. 2019).

The Second Circuit pointed out that the majority of the 420-month sentence imposed after the defendant's conviction at trial – 240 months – was imposed on a count charging obstruction of justice. *Id.*, at 16. As Judge Calabresi noted in concurring, "[i]t is ironical – more than ironical, potentially dangerous – that the government was able to take what is already a very serious crime – attempting to provide material support to a foreign terrorist organization – and, on the basis of some not overly strong facts, bring an obstruction charge that more than doubled the maximum sentence otherwise available." *Id.*, at 29-30 (Calabresi, J., concurring).

Upon remand, this past August the District Court imposed a total sentence of 240 months – 180 months for the material support count, and 60 months consecutive on the obstruction count – *180 months fewer than the initial sentence imposed*. *See United States v. Pugh*, 15 Cr. 116 (NGG) (August 3, 2022) (ECF # 196).

While the government's arguments in its sentencing submission suffer from additional deficiencies, those will be addressed at the sentencing hearing tomorrow.

Respectfully submitted,

Joshua L. Dratel

Peter E. Brill

JLD/